Opinion
DOSSEE, J.
Contra Costa County, intervener in an action for child support brought by Linda L. Woodyard, appeals an order of the superior court reducing child support arrearages set by a previous California support order to reflect an amount allotted by a later Colorado order. We hold that Woodyard did not waive the provisions of the California order and that she is not estopped from collecting under that order.
*1455 Factual and Procedural Background
An interlocutory judgment of dissolution of the marriage of Ward and Woodyard was filed on December 27, 1978, in Contra Costa County. That judgment awarded custody of the couple’s child, born September 15, 1974, to Woodyard. Ward was required to pay $200 a month for child support until the child attained majority, married or became self-supporting. Final judgment was filed on April 9, 1979. On May 11, 1979, Ward’s support obligation was modified to decrease the payment to $150 per month commencing April 20, 1979.
In January of 1984, the District Attorney of Kern County filed a petition on behalf of the county and Woodyard under the Revised Uniform Reciprocal Enforcement of Support Act (hereafter URESA, former Code Civ. Proc., §§ 1650-1699) in the Kern County Superior Court to enforce the support order against Ward, alleging that Ward now resided in Colorado.[1]
In August of 1984, the District Court of Adams County, Colorado, entered a “stipulated order” which stated that Woodyard was not present but was represented by the county attorney. Ward was present and represented by counsel. The order of the Colorado court stated that there was a stipulation that Ward would pay $75 per month child support and $25 per month toward arrearages of $5,850. The order made no reference to the California dissolution or to any California support order. The order did not state that it was modifying the California order.
The parties agree that Ward paid substantially as ordered by the Colorado court. In December of 1992, after the child had become emancipated, Woodyard petitioned to collect unpaid support under the original order. Appellant county intervened in the action pursuant to Welfare and Institutions Code section 11475.1.[2] Ward answered the petition, arguing that the Colorado order modified and superseded the original support order. The parties agree that the difference between the two orders is approximately $11,000.
The Superior Court of Contra Costa County ruled that the Colorado order was the result of a stipulation and that both parties were represented by counsel. The court determined that the stipulated order precluded Woodyard *1456 from enforcing the California order pursuant to the doctrine of estoppel. The county appealed.
Discussion
On appeal, the county argues that both statutory and case law preclude a finding that the Colorado order modified the original order. Appellant further argues that estoppel cannot apply because Woodyard was not present and was not in an attorney-client relationship with the county attorney in Colorado and thus did not agree to the stipulated order. We agree with appellant and reverse the superior court’s order.

Modification of Support Orders Under URESA

In In re Marriage of Popenhager (1979) 99 Cal.App.3d 514 [160 Cal.Rptr. 379], Division Two of this court discussed modification of a child support order in an action under URESA. The court relied on the plain language of Code of Civil Procedure section 1689 to conclude that where no plea for modification has been raised, a reciprocal support order will not act to modify the prior support order unless the reciprocal order reflects that the issue of modification was raised and litigated. That court also noted that a 1970 amendment to section 1689 provided that a reciprocal order would not operate to modify the original order unless it specifically provided for such modification.[3] The Popenhager court held that although a foreign court had the power to modify a California support order, that power must be specifically exercised in response to a specific plea to modify. (99 Cal.App.3d at pp. 521-522.) “[T]he amount on the face of the reciprocal order merely represents the sum currently enforceable.” (Id., at p. 521.)
The record in the instant case does not indicate that the Colorado court specifically intended to modify the California order. There is no indication that a separate action was ever filed to modify the California order. It is clear in the instant case that there was no request for modification, and the order *1457 of the Colorado court did not mention modification but merely ordered respondent to pay the amount he was apparently able to pay at the time.[4]

The Doctrine of Waiver Does Not Apply

Respondent argues that In re Marriage of Paboojian (1987) 189 Cal.App.3d 1434 [235 Cal.Rptr. 65], requires the application of principles of waiver to bar the county from collecting more than the amount stated in the Colorado order. We disagree. Paboojian involved a custodial parent who orally told the noncustodial parent to “ ‘[t]ake care of the children and forget the alimony.’ ” (Id., at p. 1437.) The noncustodial parent relied on this statement and made no spousal support payments.
The feature that distinguishes Paboojian from the instant case is demonstrated in the court’s discussion of the elements of waiver. The court noted that there must be a voluntary relinquishment of a known right. In addition to the existence of a present right, benefit or advantage, there must be “ ‘. . . an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished.’ [Citation.]” (In re Marriage of Paboojian, supra, 189 Cal.App.3d at p. 1437.) In the instant case, appellant made no oral statements and signed no written waivers. She was not present at the Colorado hearing. Her URESA petition had been filed by the Kern County District Attorney, and she was “represented” in Colorado by the county attorney.
As noted in Jager v. County of Alameda (1992) 8 Cal.App.4th 294 [10 Cal.Rptr.2d 293], “ ‘[t]he statutory scheme empowers the district attorney to establish, modify and enforce support obligations “in the name of the county on behalf of the child, children or caretaker parent.” . . . The purpose of such actions is to provide a direct procedure for a county to recoup public assistance, and to assist parents with limited resources to enforce support obligations so that public funds are not again unnecessarily expended. [Citations.] Notwithstanding the collateral benefit to the custodial parent, the “client” in such actions remains the county.’ [Citation.]” (Id., at p. 297, italics omitted.) There is no attorney-client relationship created between the *1458 district attorney and the parent in such support actions. (Ibid.)[5] There was no waiver by appellant.

Contract Principles of Promissory Estoppel Are Inapplicable

Respondent also argues that the stipulated order was a contract, supported by consideration, which may not be breached. He also claims that Woodyard is estopped by her promise because he reasonably relied thereon to his detriment. Neither contractual theory is viable where appellant was not represented in the Colorado action. Even if the stipulation is considered to be a contract, there is no mention of modification of the California order. The Colorado court merely ordered respondent to pay $75 per month, without reference to a modification.
There is a similar fault in the promissory estoppel argument. Respondent argues that appellant promised to accept $75 per month instead .of $150 per month. However, there is no evidence that appellant ever agreed to accept the lower amount in lieu of the higher amount. The Colorado order merely represented the sum that was then currently enforceable. (In re Marriage of Popenhager, supra, 99 Cal.App.3d 514, 521.) Any reliance by respondent on the Colorado order as being a modification of the original order was unreasonable and unsupported by statutory or case law.
The order is reversed, and the matter is remanded for reconsideration in light of this opinion. Costs are awarded to appellant.
Strankman, P. J., and Stein, J., concurred.

Code of Civil Procedure section 1689 has been replaced, without substantive change, by Family Code section 4840, effective January 1, 1994. At the time of the events described herein, the former section 1689 was effective.

Welfare and Institutions Code section 11475.1 provides that the district attorney of a county has the responsibility to take action to establish, enforce and modify child support obligations and to recover arrearage in support payments.

Former Code of Civil Procedure section 1689, as quoted in In re Marriage of Popenhager, supra, 99 Cal.App.3d 514, 522, provided: “ ‘A support order made by a court of this state pursuant to this title does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar provision of law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.’ ” (Italics omitted.)

We note that the law is no different in Colorado. In In re Marriage of Enewold (Colo.Ct.App. 1985) 709 P.2d 1385, the court considered the situation where the noncustodial parent stipulated with the district attorney as to the amount of support payments and arrearage. The noncustodial parent subsequently argued that this stipulation excused him from any further payment under the original Colorado order. The Court of Appeals held that under Colorado’s version of URESA, the second order did not nullify the rights and duties of the parties under the original order. (Id., at p. 1386.) In the URESA proceeding, the issue of modification of the original order was not raised, noticed or specifically litigated; thus the original order was still binding. (Ibid.)

Colorado law also expressly disclaims the existence of an attorney-client relationship between the prosecuting attorney and the parent in child support enforcement actions. (Colo. Rev. Stat, § 14-5-119, subd. (2).)